Staples, J.
A bond is a deed whereby the obligor promises to pay a certain sum of money to another at a day appointed. 2 Black. Com. 846. An obligor and obligee are essential to the existence and constitution *603 of such an instrument. It is not indispensable that the party to whom the promise is made should be mentioned eo nomine, that his name of baptism and sir-name shall be- given, but he must be in some unmistakable manner designated in the instrument. A writing, though executed with all the solemnities of a deed, without such obligee, is a mere nullity. It imposes no liability upon the party issuing it. It confers no rights upon him who receives or holds it. It is not simply an imperfect deed: it is no deed at all. It only becomes a deed when the name of, an obligee is inserted, and delivery made by the obligee or by some one legally authorized by him. If the blank is filled by an agent, then the agent as certainly makes the deed as though the entire obligation had been written, signed, sealed and delivered by him. His act binds a principal not before bound. • It creates a contract having no previous existence. It is true the act in question is merely the insertion of a name. Still, its effect is to impart vitality to a piece of waste paper. It calls new rights and obligations into existence. It is followed by all the consequences resulting from the execution of the most solemn instruments.
The argument sometimes advanced, that there can be no danger or difficulty in conferring the power by parol, when nothing remains to be done but the insertion of a name to render the instrument complete, does not meet the real issue. The question is not one of trust and confidence reposed, but of power conferred. In the numerous and diversified transactions of mankind agencies of the gravest character are often created by parol. A partner may bind his co-partner to any amount, for any matter within the scope of the partnership, by a note executed in the partnership name. The authority of an agent to sell the land of his principal may be conferred *604 without writing, and the latter may thus he hound irrevocably for his entire estate. In the execution and en-of negotiable paper powers may be and are . • , often conferred by parol upon agents involving liabilities to the amount of millions. The law recognizes such agencies as essential to the commerce of the world. Why may not the agent, in all these cases, impose the same liabilities by deed, in the name of his principal ? If he may sell the land, fix the price, and agree upon all the terms of the contract, why may he not perform the more formal act of executing the conveyance? The answer is, the authority of the agent must be commensurate with the act he performs. The stream can never be higher than its source. If the act of the agent is the execution and delivery of a deed, his authority must be by deed. It does not matter how much of the instrument may have been written by the principal, if it is a mere nullity when it leaves his hands, and only becomes operative by act of the agent; upon every principle of sound legal reasoning the result must inevitably be the same. Whenever the agent undertakes to bind his principal by an act, his authority, in point of dignity, must be coequal with the act. The question is not, therefore, whether it is expedient that a mere parol agent shall have the power to fill the blank with the name of an obligee; but whether it can be done and sustained without violating well established principles of law.
A little reflection will show that these principles are not without substantial reasons to support them. At common law a sealed instrument imposed peculiar liabilities. It was not affected by any statute ,of limitations. • 1 / r \ It operated as an estoppel. The obligee was not permitted to aver any want of consideration to avoid it; nor could he defeat an action at law therein by showing any failure of title, or breach of contract, or mistake, or *605 fraud in the procurement of the bond. It ig true that some of these obstacles have been removed by statute, and parties may now defend themselves in the common law courts upon grounds purely equitable; but both in Virginia and in England sealed instruments confer rights and impose obligations, which can never grow out of the execution of any mere parol contracts. It is reasonable and just, therefore, that a party setting up a deed, and seeking to enforce it, shall be prepared to show, if necessary, that it is the act of the grantor himself, or of some one empowered by an instrument of equal dignity with the deed.
When the writing which is the subject of this controversy left the hands of Preston, it was not a deed. It certainly did not constitute a contract. It was, indeed, of no more value than the paper which contained it. When it passed into the possession of Hull it had in some way become a deed and a binding contract, according to the theory of counsel. How did it so become a deed? Certainly not by the act of Preston, as he was then absent, and was not even informed of the/transaction until some time afterwards. It was the act of the agent which gave efficacy to the paper and created an obligation by deed not before in existence.
At the time Preston signed the paper it was the expectation of both Mantz and Preston that the money could be obtained from Governor McMullin; but failing in that, it may be reasonably inferred it was expected to borrow it elsewhere; and authority was given to Mantz, the agent, to fill the blank in the bond with the name of the person making the loan. Governor Mc-Mullin did not advance the money, as was expected, and the arragement was made with the plaintiff Hull, and his name inserted as obligee in the bond. The agent did not simply, fill the blank with a name previously *606 agreed on by Preston; but he called into existence a new and unknown party, and bound bis principal by a contract witb him. In this respect tbe case is much stronger tban tbat of tbe simple insertion of a name already declared by tbe obligor. A deed must exist before it can be delivered-—that is clear. If an obligation, complete and perfect, be delivered by tbe obligor to a third person for the use of tbe obligee, it is the deed of the obligor immediately. Tbe deed only becomes inoperative by tbe refusal of tbe obligee to receive it. In such case tbe delivery is tbe act of tbe principal, or obligor and not of tbe third person or agent. Skipwith's ex’or v. Cunningham, 8 Leigh 271.
Whenever, however, tbe principal commits to tbe agent an instrument tbat is not complete and operative at tbe time, witb a blank for the obligee or tbe sum to be paid, to be filled by tbe agent and according to bis discretion, the act of mind, tbe disposing power, which are always essential and efficient ingredients of tbe deed, are tbe agents; and tbe instrument takes ¡effect by bis act of execution and delivery, and is binding upon tbe principal or not according to tbe authority confined on tbe agent.
If Preston bad endorsed bis name upon a piece of blank paper with scrolls attached, and tbe agent bad after-wards added tbe entire obligation under the previous verbal instructions of Preston, tbe agent in tbat case, would have performed an act of no greater dignity tban he has in this. Tbe trust reposed may be greater in tbe one case than in tbe other, but tbe result is tbe same. In each case tbe principal becomes bound by an obligation created by act of tbe agent.
If tbe name of the obligee may be inserted, why may not tbe sum also; and if these may be supplied, why not tbe mere formal parts of the deed. If we once depart *607 from the rule, how is the time to be drawn consistently with the preservation of any rule at all. If we say that the name or sum may be inserted by the agent, will it not lead us inevitably to the doctrine that the entire deed may be executed by the agent also. We shall be carried on step by step, if we mean to be consistent, until we have destroyed all the well settled distinctions between sealed and unsealed instruments.
It is asked what good purpose is to be observed by these distinctions. It is sufficient to say that they exist; having their origin in well established principles. In the language of Chief Justice Marshall, they have taken such firm hold of the law they can only be removed by the power of legislation.
We must bear in mind that one change in the law often involves the necessity of others. Much mischief ensues, many embarrassments often occur in the administration of justice, from the disregard of some well established rule of law intimately identified by a long course of decisions, with others which in their turn áre interwoven with the entire framework of society. If deeds are to be placed in the particulars now contended for, upon the same footing with parol contracts, there are other distinctions between them that ought to be abolished. The same act of limitation should apply to a bond as to a promissory note. The defendant should be permitted to show a want of consideration in one case as in the other. And above all, sound policy it seems to me, requires that the whole technical doctrine of estoppel by deed should be greatly modified, if not entirely abolished.
It has been suggested that the doctrine of estoppel in pais might apply to a transaction like this; and the obligor estopped to deny the bond. It was said by Judge Gibson, of the Supreme court of Pennsylvania, in rela *608 tion to a writing executed in blank, and afterwards filled by a parol agent, if it could be sustained at all, it would be upon the ground of estoppel in pais. But, so far as I am informed, he is the only Judge who has suggested the idea. Ho reference is made to it by Baron Parke or Chief Justice Marshall, or Judge Cabell, or by the Supreme court of the United States, or that of New York, in the cases before them. This proposition carried to its legitimate results, will show that a mere parol agent may always bind the principal by a deed. If the obligor who trusts his agent with a writing with blanks as to the names or sums is estopped to deny that it is hia bond, when the blanks are afterwards filled by the agent, so must also the obligor who trusts his agent merely with his name and a scroll attached, when the entire obligation is afterwards added. In truth the doctrine of estoppel has no application to the case. The party advancing his money is put on his guard by the face of the paper. He sees that it is not a deed, and he is bound at his peril to inquire into the authority of the agent to make it a deed. He is presumed to know the law. He must know that the agent’s authority must be by deed. If he is misled, it is by his own folly and the act of the agent. It can not be justly said that he has been deceived by the party whose signature is attached to the writing.
Having thus considered the principles affecting the case, let us see how stand the authorities, bearing upon the question.
In England one of the earlest cases is that of Texira v. Evans, decided by Lord Mansfield. We have no contemporaneous report of the case. All our information is derived from the statement of an English judge, made long after Texira v. Evans was decided. However, the case was questioned at an early day by the most eminent judges and lawyers, and has been long since en *609 tirely overruled in the English courts. I will not attempt h comment upon or even cite the various cases. A brief reference to that of Hibblewhite v. McMorine, 6 Mees & Wels R. 200 will be sufficient. This case was decided by the court of Exchequer in 1840 ; the opinion being delivered by Baron Parke, than whom no more eminent common law judge ever adorned the English Bench, One question arising in the case, was, whether the writing was a deed or mere note. It was held to be a deed. He then said: “Assuming the instrument to be a deed, it was wholly improper if the name of the vendee was left out; and to allow it to be afterwards filled up by an agent appointed by parol, and then delivered in the absence of the principal as a deed, would be a violation of the principle that an attorney to execute and deliver a deed for another must himself be appointed by deed.” He further declares: “ The only case cited in favor of the validity of such a deed, is Texira v. Evans, which is not sustained by the authorities, and which cannot be considered to be law.” After reviewing the various cases, and showing they are not in conflict with his views, he proceeds: “It is enough to say, there is none that shows that an instrument which, when executed, is incapable of having any operation, and is no deed, can afterwards become a deed by being completed and delivered by a stranger, in the absence of the party who executed it, and unauthorized by instrument under seal.”
It has been suggested that this authority has been much weakened if not overthrown by the case of Eagleton v. Gutteridge, 11 Mees and Wels. R. 465. This is an entire mistake. The only point there decided, was, that a complete and operative power of attorney was not invalidated by the insertion of the attorney’s Christian name in the absence of the principal. The instrument was good without the addition, and was not affected by *610 it. The opinion of Baron Parke in Hibblewhite v. McMorine was sustained by the unanimous decision in Enthoven v. Hoyle, 9 Law& Eq. R. 434; one of the latest cases; and is now the settled law of England. 2 Starkie Evi. 431; Buller nisi prius 281.
In the United States the authorities are conflicting. .The volumes containing .the various cases are not to be found in this place. Many of the decisions are cited and distinguished in Mr. Robinson’s Practice, 2 vol. new edition 86, to which I beg to refer. It seems that in New York and South Carolina, the courts have followed the doctrines of Lord Mansfield, in Texira v. Evans. In Pennsylvania formerly the same rule was adopted; but in Wallace v. Harmstael, 3 Harris R. 462-8, Chief Justice Gibson, speaking for the court, expressed very grave doubts of the correctness of Texira v. Evans, and said that case could only be sustained, if at all, on the ground the obligee had estopped himself by an act in pais.
In Massachusetts I am unable to say what the rule is. The case of Smith v. Crooker & Cushing, 5 Mass. R. 538, relied upon by counsel for defendant in error, does not decide, if it even raises the question involved in this controversy. There the instrument was a complete obligation when signed by the obligor; and the alteration subsequently made was wholly immaterial. Judge Parsons, however, in delivering his opinion, went far beyond the case before him. He declared, and this is now relied on, “ That the party executing a bond knowing there are blanks in it to be filled by inserting particular names or things, must be considered as assenting that the blanks may be thus filled up after he has executed the bond.” Chief Justice Marshall in “United States v. Nelson,” hereafter to be considered, plainly shows that Judge parsons had reference to an operative instiument when *611 executed, but having blanks to be filled with names or things already agreed on by the' parties, and not to an instrument with a blank such as deprived it^of all obligatory force when signed. A blank of such vital importance that the paper, while it so remained, was a mere nullity, does not seem to have been in the view of Judge Parsons.
I have thus named the States which are supposed to follow Texira v. Evans; there may be others. It is impossible to say in the absence of the reports in the various States of the Union.
On the other hand the Supreme court of North Carolina, when the Bench was adorned by the genius and learning of a Gaston and a Ruffin, has not hesitated to follow the later English cases, overruling the decision of Lord Mansfield. In Davenport v. Sleight, 2 Dev. & Bat. Law R. 881, an instrument signed and sealed by the . defendants in blank, and delivered to an agent, with directions to purchase a vessel for the defendant, and fill up the instrument with the price to be agreed on, and deliver it, was held not a good bond, even though the defendant declared his approbation of what had been done. The court considered the insertion of the sum in the blank space intended to consummate- the deed, as done without legal authority; and therefore that the instrument is void as a bond. And with this ruling it is believed, agree the cases in Kentucky, Maryland, Texas and Tennessee.
The same principle is laid down in Parsons on Contracts, 2 vol. 723, in the following terms, and is there supported by a strong array of cases: “If there are blanks left in a deed affecting its meaning and operation in a material way, and they are filled up after execution, there should be a re-execution and a new acknowledgment.
*612 In the case of the United States v. Nelson, 2 Brock. R. 64, Chief Justice Marshall did not hesitate to express his entire concurrence with the later English decisions. In that case the printed form of an official bond had been signed by the securities, with blanks for the date and penalty. It was afterwards signed by the principal and the blanks filled, in the absence of the securities, without their knowledge and without any authority from them other than might be implied from their having executed the paper with intention to bind themselves as sureties, and with full knowledge of the object of the bond. The Chief Justice held that the instrument was not binding upon the securities. In the course of his opinion, he said, no sum being mentioned in the bond the defendants were no moi’e bound by the instrument they had executed, at the time of its execution, than if the paper had been all blank. He maintained there are certain differences between sealed and unsealed instruments which make it difficult to apply the principles of one contract to the other: that these differences and rules founded on them, though originating in a different state of society, have taken such fast hold of the law that they can be separated only by the power of legislation. Throughout the opinion he kept carefully in view.the distinction between an instrument which is a mere nullity, and imposes no obligation whatever until it is signed and delivered, and an instrument which is complete when executed; and the alteration is merely in the words, or in filling blanks with names or things agreed on, and by consent of the parties. And he showed that the cases relied on as sustaining the validity of blank bonds afterwards filled up, were all of this latter character. He admitted that the Supreme court of the United States, in Speake v. United States, 9 Crunch R. 28, had gone very far in deciding that an obligation *613 may be originally created by virtue of an authority merely implied from the sealing aud delivery of a paper which, in its existing state, could avail nothing; and he thought it probable the time would come when that court might completely abolish, in this particular, the distinction between sealed and unsealed instruments. But no one reading the opinion carefully can fail to perceive, that the learned Chief Justice did not incline to this view, and that he intended to adhere to the doctrines of the common law, as expounded in England. It is to be observed that the ease of Hibblewhite v. McMorine was decided many years afterwards; so that the Chief Justice arrived at his conclusions without the aid of the able and exhaustive opinion of Baron Parke.
The case of White v. Ver. & Mass. R. R. Comp. 21 How. U. S. R. 575, has been also much relied on as authority for the defendant in error. It was there held that the bonds of a railroad company, payable in blank, might be filled up by any bona fide holder, and made payable to his own order; but the reason assigned by the board, is, that the usage and practice of railroad companies, of capitalists and business men of the country, aud the decisions of the courts, had impressed upon this class of securities the character of negotiability; being negotiable, they were of course, governed by the laws applicable to such instruments; one of which is, they may be executed, endorsed or uttered under a mere parol authority.
In the course of his opinion, Mr. Justice Nelson alluded to the case of Texira v. Evans; he admitted it was not the law in England. He said, however, that courts of the highest authority in this country have followed Lord Mansfield, and have not hesitated to meet the fears expressed by Baron Parke, that the effect would be to make bonds negotiable, by admitting the consequence. *614 .Exit the Supreme court'of the United States have not yet gone that far; and Mr. Justice Nelson admits that Chief Justice Marshall was unwilling to do so. It is conceded on all sides, that to follow the rule declared in Texira v. Evans is to destroy all distinction between deeds and mere parol contracts. Are we prepared for that in Virginia ? No one familiar with the opinion of the judges, and the decisions of our courts, can hesitate to affirm that the disposition here is to follow the common law decisions, and preserve unimpaired the distinction between sealed and unsealed instruments..
In Harrison v. Tiernans, 4 Rand. 177, the question was as to the validity of certain instruments taken by the sheriff as bail bonds. They were in the usual form, signed and sealed by the obligors, but without any sum being mentioned as the penalty of the bonds. Counsel, in arguing, endeavored to "apply the principles governing bills of exchange and promissory notes, according to which a man who signs his name to a blank piece of paper will, under certain circumstances, be considered as giving authority to fill it up with a valid instrument. But this court said, Judge Gabell delivering the opinion, that bills of exchange and promissory notes are not deeds ; and authority to execute them may be given by parol, or even inferred from circumstances; but a bail bond is a deed which cannot take effect without delivery; and that delivery can only be made by the party himself, or by some attorney legally authorized by deed for that purpose.
"What are we to understand by this language: that the blanks in these bonds might have been filled by a mere parol agent ? Cleai-ly not! Judge Cabell means that this could only be done and the instrument delivered by the parties themselves, or by attorneys authorized by deed. If he. does not mean this, his language *615 does not admit of any fair and reasonable interpretation. He declares that the bouds were wholly inoperative by reason of the failure to insert a penalty. I beg to know ' what substantial difference there is between an instrument confessedly a mere nullity for the want of a sum to be paid, and an instrument which is a mere nullity for the want of an obligee to whom to be paid. The authority to execute and deliver, or complete and deliver such an instrument must of necessity be the same in both cases.
In Cleaton v. Chambliss, 6 Rand, 86, this question arose incidentally. According to my understanding, the proposition there announced, is, that any material alteration of a deed invalidates it, unless made under such circumstances of consent by the obligee as amounts to a re-execution or re-acknowledgment of the writing. The reason is obvious; the alteration changes the contract. The writing is no longer the deed of the obligor or grantor. In its altered state, it must be re-executed by him, and then it takes effect from the re-execution. How whether it be the re-execution of an altered deed, or the execution of a new one, or the completion of an imperfect one, there can be no well defined distinction ; and the same principles must govern in each case in respect to the act necessary to a valid instrument.
I am aware that in Rhea v. Gibson's ex'or, 10 Gratt. 215, 220, Judge Samuels admitted there was some conflict of authority upon this point; h e, however, cited a number of cases as- deciding that the filling of blanks in a bond will not give it validity, unless under circumstances ' which make a new execution thereof. And among the cases thus cited are those I have just mentioned. Why they are not authority for us I am at a loss to understand; but conceding they are not, they clearly show the bearing of the Virginia courts and *616 judges, and they indicate a purpose to adhere to the common law doctrines until changed by legislation.
The cases of Clegg v. Lemessurier, 15 Gratt. 108, and Stinchcomb v. Marsh, ibid 202, though not involving the point in controversy here, exhibit the same tendency of our courts in this class of questions. In one of these eases, the counsel having cited the decisions of eleven States of the Union to show that the affixing of a scroll to the name is of itself sufficient evidence of its being intended as a seal, the court said, however desirable conformity with the different States might be, it furnished no sufficient reason for reversing our course of decisions. In the other case, the question turned upon the operation and effect of a power of attorney, and of acts done by a sub-agent thereunder. Counsel, in urging upon the court to give a liberal construction to tl struinent, had suggested that a spirit of self-reliai and directness of purpose will prompt the people of t us age and country to disregard the formalities of conveyancing and the rules of law by which they are - -escribed. Judge Lee said this constituted no sufficient reason, nor furnished any adequate authority to change -the law,- or overthrow plain, intelligible and well settle principles : That is the province of the Legislature, a^id not of the judiciary.
I think these cases strongly illustrate the reluctance of this court to reverse its course of decisions, because other States may have adopted a different rule, or because of casual instances of hardship occurring in individual cases.
In the present ease it seems to he the safest course to adhere to our previous rulings and to the doctrines of the common law as expounded by the courts of that country from which we have derived our laws, our language and our system of jurisprudence. It is true that- *617 in many cases the principles of the common law, as sanctioned aud enforced by the English courts, are ill suited to the temper of our people, aud the genius of our institutions': but as a general rule, that State which most' rigidly adheres to the course of English decisions and precedents, will in the end attain the wisest, the most stable and the most conservative administration of justice.
For these reasons I am of opinion the judgment of the Circuit court should be reversed, the verdict sot aside, and a new trial had, in accordance with the principles herein announced.
The other judges concurred in the opinion of Staples, J.
Ttfthjudgment is as follows:
'ThiFday came again the parties, by their counsel, and the couí’t having maturely considered the transcript of the record! of the judgment aforesaid, aud the arguments-of cikmsel, is of opinion, for reasons stated in writing aud filed with the record, that the said Circuit court erred in giving to the jury the instruction moved on the part of the plaintiff below, and set out in said defendant’s bilf of exceptions, number 1; and that the said Court, in lieu of the said instruction, should have given to the jury the instruction moved on the part of said defendant in that court and set out in bill of exceptions number 2. Therefore, it is considered that the said judgment of the said Circuit court, for the error aforesaid, be reversed and annulled, aud that the defendant in error do pay to the plaintiff in error his costs by him about his appeal in this behalf expended. And this court, proceeding now to render such judgment as the said Circuit court ought to have rendered in the cause, it is further considered, that the verdict of the *618 jury be set aside agreeably to the motion to that effect' finally made by the said defendant in said Circuit court, and that a new trial be awarded him, at which the court, if so moved, and if the evidence be substantially the same as on the former trial, shall instruct the jury in conformity with the foregoing opinion.
Which is ordered to be certified to the said Circuit court for Smyth county.
. Judgment beyers®»,